IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-880

Filed 1 July 2026

Guilford County, No. 19CR085870-400

STATE OF NORTH CAROLINA

       v.

CRISPRIN LARMAR FAIR, Defendant.

Appeal by Defendant from judgment entered 20 September 2024 by Judge Jason E. Ramsey in Guilford County Superior Court. Heard in the Court of Appeals 26 March 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Jodi P. Carpenter, for the State.*
>
> *The Sweet Law Firm, PLLC, by Kaelyn N. Sweet, for Defendant–Appellant.*

MURRY, Judge.

Crisprin L. Fair (Defendant) appeals from jury verdicts convicting him of trafficking in heroin by possession and transportation. On appeal, he argues that the trial court plainly erred (1) by failing to properly instruct the jury on the guilty-knowledge element of trafficking in heroin by possession and transportation and (2) by "allowing . . . testimony . . . that Jose Garcia and Juan Olmos were arrested and charged as part of the investigation because neither individual was called as a witness" at his trial. For the following reasons, this Court disagrees and holds that the trial court did not plainly err on either count.

## I.    Background

This matter arises out of a joint drug-seizure operation between the Federal Drug Enforcement Administration (DEA) and multiple State and local law-enforcement agencies. In early October 2019, the DEA wiretapped multiple individuals suspected of drug trafficking, including Jose Garcia and Juan Olmos. Through intercepted communications between Garcia and an unknown male,[1] DEA Special Agent Christopher Morgan learned of a potential meeting in Greensboro "regarding a possible exchange of currency for illegal drugs."

At trial, DEA Agent Morgan testified that these communications tried to "coordinate or facilitate a drug transaction to occur sometime in the near future." He explained that an "unknown male customer want[ed] kilograms of cocaine, and [Garcia] . . . advised" that he had no "cocaine at this point" but that "he had heroin . . . if the customer wanted it." The unknown male agreed to buy heroin, and once the parties agreed on a price, the unknown male told Garcia that he would be "passing a phone number for the individual who was going to meet [Olmos]" for the exchange. Greensboro Police Department Detective Christopher Cline discovered that this phone number belonged to Defendant. DEA Agent Morgan testified that after speaking with the unknown male, Garcia "contacted [Olmos] to see if [he] would agree to do the delivery to Greensboro, and he ultimately did." Shortly thereafter,

---

[1]    The unknown male was never positively identified during the investigation.

surveilling officers observed Garcia arriving at Olmos' home, which DEA Agent Morgan believed was Garcia "deliver[ing] the kilogram of heroin" for Olmos to exchange the following day. On cross-examination, DEA Agent Morgan affirmed that neither Garcia, Olmos, nor "anybody else . . . mention[ed] *comida, girl,* or any other street lingo for narcotics" in these communications. (Italics added.)

On 8 October 2019, Garcia contacted Defendant "trying to establish the logistics" and told Olmos that he could "start heading this way." Garcia asked Defendant to provide an address of "where . . . to send his driver"; Defendant replied with an address to the Compare Foods Supermarket in Greensboro. Garcia forwarded this information to Olmos, who started driving to that location as DEA Agent Morgan and his surveillance team followed. Meanwhile, Detective Cline observed Olmos arrive at the Compare Foods parking lot to meet Defendant. After a brief interaction, Olmos grabbed a box from the front compartment of his vehicle and handed it to Defendant. Defendant placed the box in the front passenger seat of his vehicle and handed Olmos a balled-up bag in exchange, after which both individuals departed. Law-enforcement officers then stopped Defendant's vehicle and recovered what appeared to be a laundry detergent box opened and resealed with glue, within which they discovered 986.5 grams of heroin. On direct examination, Detective Cline testified to the "package[ ] . . . look[ing] like half of the detergent had been poured out and then the kilogram [of heroin] was put back in there." He determined that "then they poured the detergent back in there to kind of conceal it a little bit, and then

either a hot glue gun or super glued the box back together."

On 4 May 2020, a grand jury indicted Defendant for two counts of heroin trafficking. This case came on for trial on 17 September 2024. The State's evidence included the testimonies of Detective Cline, DEA Agent Morgan, six other law-enforcement officers, a senior forensic chemist, a criminal intelligence analyst, two body-camera videos, and transcripts from seven audio wiretaps. DEA Agent Morgan testified to the general course of the investigation, including the officers who identified and later arrested Garcia and Olmos. Neither Garcia nor Olmos testified at trial. Defendant did not testify or put on any evidence. The trial court instructed the jury on the offense of trafficking in heroin by possession according to N.C.P.I.— Crim. 260.17 and on trafficking in heroin by transportation according to N.C.P.I.— Crim. 260.30. On 20 September 2024, the jury found Defendant guilty of trafficking in heroin by possession and by transportation. The trial court sentenced Defendant to two consecutive terms of 225–282 months' imprisonment. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id*. § 15A-1444(a) (pleaded not guilty but found guilty).

## III. Analysis

On appeal, Defendant "specifically and distinctly" argues that the trial court

plainly erred (1) by failing to properly instruct the jury on the guilty-knowledge element of trafficking in heroin by possession and transportation and (2) by "allowing the State to elicit testimony from DEA Agent Morgan that Jose Garcia and Juan Olmos . . . because neither individual was called as a witness" at his trial. *See* N.C. R. App. P. 10(a)(1). Because Defendant acknowledges his failure to object to either issue at trial, we review his arguments here only for plain error.

To demonstrate plain error, a defendant must show: (1) the trial court fundamentally erred; (2) "the jury probably would have returned a different verdict" "absent the error"; and (3) "the error is an 'exceptional case' . . . seriously affect[ing] 'the fairness, integrity or public reputation of judicial proceedings.'" *State v. Reber*, 386 N.C. 153, 150 (2024) (quoting *State v. Lawrence*, 365 N.C. 506, 518–19 (2012)). Plain error "must be so fundamental as to amount to a miscarriage of justice or . . . probably result[ ] in the jury reaching a different verdict than it otherwise would have reached." *State v. Collins*, 334 N.C. 54, 62 (1993) (quotation omitted). "In other words, the test examines the state of all the evidence except for the challenged evidence and asks whether, in light of that remaining evidence, the jury probably would have done something different." *Reber*, 386 N.C. at 162. In so doing, "examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Wood*, 185 N.C. App. 227, 232 (2007) (citation modified).

## A. Instructional Challenges

Defendant first argues that the trial court plainly erred by failing to instruct

the jury on the guilty-knowledge component of trafficking in heroin, *i.e.*, that the State had to prove beyond a reasonable doubt his knowledge that the substance he possessed and transported was heroin. Because the evidence placed his knowledge in dispute, he suggests the trial court should have given instructions found in footnote six of N.C.P.I.—Crim. 260.17 (drug trafficking by possession) and N.C.P.I.—Crim. 260.30 (drug trafficking by transportation). These additional instructions require the jury to find that Defendant "knew that [he] possessed [heroin]," N.C.P.I.—Crim. 260.17, and that he "knew what he transported was [heroin]," N.C.P.I.—Crim. 260.30. Ultimately, Defendant asserts that "the trial court's failure to give the guilty-knowledge instruction deprived [him] of his sole defense to the charges" and that, absent the error, "the jury probably would have reached a different result." For the following reasons, we disagree and hold that the trial court did not err in either respect.

A defendant commits a Class C felony by possessing 28 grams or more of heroin. *See* N.C.G.S. § 90-95(c), (h)(4). To secure a heroin-trafficking conviction by either possession or transportation, the State must prove beyond a reasonable doubt the defendant's "(1) knowing possession (either actual or constructive) of (2) a specified amount of heroin." *State v. Keys*, 87 N.C. App. 349, 352 (1987). The offense of trafficking in heroin "requires proof that the defendant *knowingly* possessed a controlled substance," *State v. Glover*, 376 N.C. 420, 424 (2020) (emphasis added)—*i.e.*, that "he has 'the power and intent to control the disposition or use' of the

substance that [he] is charged with possessing [or transporting], *with knowledge of the identity of the substance* that [he] is alleged to have possessed [or transported]," *State v. Miller*, 369 N.C. 658, 670 (2017) (emphasis added) (quoting *State v. Harvey*, 281 N.C. 1, 12 (1972)). The element of knowing possession requires proof of two distinct components: (1) the "power and intent to control the disposition or use" of the substance and (2) a guilty knowledge that it was the specific controlled substance charged in the indictment. *Id.*

But where the State "makes a *prima facie* showing that the defendant has committed . . . trafficking by possession[ or] trafficking by transportation," the law presumes that the defendant knows the identity of the substance. *State v. Galaviz-Torres*, 368 N.C. 44, 48 (2015) (italics added); *see State v. Barbee*, 92 N.C. 820, 821 (1885) ("The law presumes that every man intends to produce the consequences that naturally result from his acts and conduct."). And where a defendant's "[s]cienter is presumed," the trial court need not, "*in the absence of a prayer*, . . . reference in its charge . . . guilty knowledge or intent." *State v. Elliott*, 232 N.C. 377, 378 (1950); *see Scienter, Black's Law Dictionary* (12th ed. 2024) ("A degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission"). In other words, where the State's evidence tends to show a defendant committed the offense of trafficking by possession or transportation of a controlled substance, the law presumes that he did so knowing the identity of the charged substance absent any evidence to the contrary. If so, the trial court need not

instruct the jury on the guilty-knowledge component of knowing possession. *See Galaviz-Torres*, 368 N.C. at 49.

N.C.P.I.—Crim. 260.17 appropriately instructs for drug trafficking by possession in relevant part that "the State must prove . . . beyond a reasonable doubt[ ] . . . that the defendant knowingly possessed [heroin]." N.C.P.I.—Crim. 260.17. "A person possesses [heroin] if he is aware of its presence and has (either by himself or together with others) both the power and intent to control the disposition or use of that substance." *Id.* But where a defendant "denies [any] knowledge of the controlled substance that he has been charged with possessing or transporting, . . . the requisite guilty knowledge becomes a determinative issue of fact about which the trial court must instruct the jury." *Galaviz-Torres*, 368 N.C. at 49 (quotation omitted). A defendant may deny his guilty knowledge by asserting knowing possession of either a container without knowledge of its contents or some drugs (just not the particular drug he is charged with possessing). *See id.* Simply stated, where a defendant denies his guilty knowledge such as to raise "a determinative issue of fact," the trial court must instruct the jury on this element of knowing possession. *State v. Watterson*, 198 N.C. App. 500, 503 (2009).

For this reason, N.C.P.I.—Crim. 260.17 contains an additional footnoted instruction stating that, where "the defendant *contends* that he did not know the true identity of what he possessed," the trial court must modify the first element of the instruction to read "that the defendant knowingly possessed [heroin] *and the*

*defendant knew that what the defendant possessed was* [*heroin*]." N.C.P.I.—Crim. 260.17 n.6 (emphasis added).[2] The trial court must expressly instruct the jury of the State's burden to prove beyond a reasonable doubt that the defendant knew the identity of the trafficked substance *only* when he asserts his lack of guilty knowledge. Thus, a defendant must assert his lack of guilty knowledge to require the trial court to amend the jury instructions.

In *State v. Lopez,* 176 N.C. App. 538 (2006), we held that a defendant "triggered" his entitlement to the guilty-knowledge instruction where he "presented evidence that he lacked knowledge" by testifying that he did not know that a refrigerator he agreed to receive for a third party contained heroin. *Id.* at 545–46. By contrast, we simultaneously held that his co-defendant did not sufficiently contend a lack of knowledge entitling him to the instruction where he "presented no evidence that he was unaware of the contents of the package and did not raise the issue of his knowledge as a determinative issue of fact to the trial court." *Id. Lopez* instructs that a defendant may sufficiently contend his lack of knowledge by testifying or presenting evidence of the same. Simply stated, "when the defendant introduces evidence of lack of guilty knowledge the [trial] court must charge on it." *State v. Nobles*, 329 N.C. 239,

---

[2] The language set out in N.C.P.I.—Crim. 260.30 n.6 is nearly identical to this language and provides in relevant part that for the jury "to find the defendant guilty of this offense[,] the State must prove . . . beyond a reasonable doubt . . . that the defendant knowingly transported [heroin]." N.C.P.I.—Crim. 260.30. As modified, N.C.P.I.—Crim. 260.30 would read "that defendant knowingly transported heroin *and defendant knew what he transported was heroin*." N.C.P.I.—Crim 260.30 n.6. (emphasis added).

244 (1991); *see Elliott*, 232 N.C. at 379 (holding guilty-knowledge instruction necessary when defendant "pleas want of knowledge . . . and offer[s] evidence in support of that plea").

But a defendant need not assert through his own evidence if his lack of guilty knowledge arises indirectly from the State's evidence. In *State v. Coleman*, 227 N.C. App. 354, 358 (2013), we held that a defendant properly "contended" his lack of knowledge without testifying or presenting evidence where the State offered video footage of him repeatedly saying "that when he was in possession of the box, he believed that it contained only marijuana and cocaine," not marijuana and heroin. *Id.* at 359. Without any evidence from the defendant, the *Coleman* Court had to determine whether the State's evidence "amount[ed] to a contention that [the] defendant did not know the true identity of what he possessed" before it could address "whether such contention amounts to [the] defendant raising lack of knowledge as a determinative issue of fact." *Id.* at 359–60 (quotation omitted). The Court equated the State's evidence to "consistent assertions by [the] defendant, admitted as substantive evidence, that he thought he was carrying marijuana and cocaine," which "made it necessary for the trial court to recognize the evidence as amounting to a contention that defendant did not know the true identity of what he possessed." *Id.* at 360. It thus held that the trial court erred by failing to instruct on the guilty-knowledge component and that such error amounted to plain error where the defendant's lack of guilty knowledge was his sole defense to the charges. *Id.*

*Lopez* and *Coleman* collectively establish that a defendant is not required to raise his lack of knowledge through his own case-in-chief if other evidence sufficiently "trigger[s]" a need for the guilty-knowledge instruction. *See Lopez*, 176 N.C. App. 545; *Coleman,* 227 N.C. App at 362. A defendant may "contend" his lack of knowledge either directly (through his own evidence) or indirectly (through other evidence "sufficient to amount to a contention") but the record *must* nonetheless demonstrate the defendant's contention that he lacked the requisite guilty knowledge. *Coleman*, 227 N.C. App. at 362. Thus, in determining whether a defendant has sufficiently contended a lack of guilty knowledge so as to require the instruction, the reviewing court must review "the entire record" and consider both the defendant's and State's evidence. *Id.* at 363 (quoting *Lawrence*, 365 N.C. at 517).

Here, Defendant recognizes that he did not testify at trial but argues that DEA Agent Morgan and Detective Cline's testimonies amount to a contention that Defendant did not know he possessed heroin under *Coleman. See id.* at 354. Consistent with the *Coleman* framework, we must first determine whether Defendant actually *contended* within the meaning of N.C.P.I.—Crim. 206.17 and 260.30 that he did not truly know what he possessed before we can address "whether such contention amounts to [D]efendant raising lack of knowledge as a 'determinative issue of fact.'" *Id.* at 360. We hold that he does not.

Although Defendant carried no burden of proof as to the elements of the charges, at no point did he indicate any belief that the drugs were a substance other

than heroin. DEA Agent Morgan's testimony that Defendant's intercepted communications did not refer to the substance as "heroin" or its street name *comida* established only that Defendant's communications lacked any reference to drug terminology, as DEA Agent Morgan clarified that Defendant's communications did not reference any controlled substances at all. Likewise, Detective Cline's testimony about the "super glued" box established only the condition of the packaging at the time of seizure. Neither witness testified to Defendant's confusion about the identity of the substance or to his lack of knowledge about the contents of the box. Having reviewed the entire record, we find no evidence suggesting that Defendant indicated his belief that the box contained something other than heroin.

Defendant correctly notes that the jury need not hear the lack-of-knowledge contention directly from him. But his attempt to analogize his case to *Coleman* overlooks a critical distinction: while the *Coleman* defendant "did not personally testify to a lack of knowledge," the record nonetheless contained "substantive evidence that [he] did not know that the substance he possessed was heroin . . . sufficient to amount to a contention that would trigger the necessity to give the required additional instruction on guilty knowledge." *Coleman*, 227 N.C. App at 359–60, 362.

Here, it does not. In *Coleman*, the State's evidence sufficiently conveyed the defendant's lack of knowledge indirectly through recordings of his stated belief that the drugs were something other than those which he was charged with possessing.

But here, Defendant made no statements to law enforcement, gave no testimony at trial, and introduced no evidence suggesting he was in any way confused or mistaken about the identity of the heroin. Without any testimony or other evidence suggesting that Defendant lacked guilty knowledge of the heroin's identity, the law presumes Defendant's guilty knowledge about which the trial court need not instruct to the contrary. *See Galaviz-Torres*, 368 N.C. at 49. He did not contend his lack of knowledge as to the true identity of what he possessed; the trial court had no duty to instruct the jury on guilty knowledge. *See* N.C.P.I.—Crim. 260.17. Thus, we hold that the trial court did not err at all by failing to include the additional guilty-knowledge instruction.

Even assuming *arguendo* that the trial court erred by failing to instruct the jury on guilty knowledge, such error would not have risen to the level of plain error where substantial evidence contradicted Defendant's lack-of-knowledge assertion. *Galaviz-Torres*, 368 N.C. at 53–54. Here, "the State elicited a considerable amount of evidence indicating that [D]efendant actually knew that he possessed and transported" heroin. *Id*. at 54. The State's evidence at trial included, *inter alia*, the testimonies from ten investigative specialists, two body-camera videos, and transcripts from seven audio wiretaps. Among other things, it tended to show that Defendant coordinated the meeting, had made similar transactions in the past, and knew the cost of heroin as opposed to other drugs. Given the State's abundant evidence, it is not probable that the jury would have reached any verdict other than

guilty. *Reber*, 386 N.C. at 159. Thus, Defendant has failed to show plain error.

## B. Evidentiary Challenges

Next, Defendant argues that the trial court plainly erred by "allowing . . . testimony from DEA Agent Morgan that Jose Garcia and Juan Olmos were arrested and charged as part of the investigation because neither individual was called as a witness" at his trial. He asserts that, "had the arrests of the co-defendants been properly excluded from the jury's consideration, the State's evidence that [Defendant] knew the sealed box of laundry detergent contained a kilogram of heroin would have been insufficient" to sustain a conviction and "the jury probably would have reached a different result." Meanwhile, the State argues that it offered these testimonies "for a legitimate purpose other than for evidence of Defendant's guilt," specifically "to explain the chain of investigation."

Generally, "evidence of convictions, guilty pleas, and pleas of *nolo contendere* of non-testifying co-defendants is inadmissible unless introduced for a legitimate purpose, *i.e.*, used for a purpose other than evidence of the guilt of the defendant on trial." *State v. Batchelor*, 157 N.C. App. 421, 430 (2003) (italics added); *see State v. Gary*, 78 N.C. 29, 37 (1985) (applies equally to evidence that co-defendant was charged and tried). This evidence is typically inadmissible because (1) "an individual defendant's guilt must be determined solely on the basis of the evidence presented against that defendant," and (2) "the introduction of evidence of charges against co-defendants deprives a defendant of the right to cross examination and confrontation."

*Batchelor*, 157 N.C. App. at 430.

In *Batchelor*, a defendant charged with cocaine trafficking argued that the trial court plainly erred by allowing a detective to testify that his co-defendant had also been charged with trafficking in cocaine and that the charges against the co-defendant were still pending. *Id.* at 430–31. The *Batchelor* Court held that any error in admitting this testimony did not amount to plain error where "there was no testimony that [the co-defendant] had been found guilty, pleaded guilty, or pleaded *nolo contendere* to the charges" and it was "unlikely that the jury inferred defendant's guilt from the evidence that his co-defendant had been charged with similar offenses." *Id.* at 431. Similarly, in *State v. Lyles*, 172 N.C. App. 323, 330 (2005), the trial court admitted evidence that a co-defendant had also been charged with the same offense as the defendant, but the State did not offer any evidence as to how that charge had been resolved. *Id.* at 329. Relying on *Batchelor*, the *Lyles* Court held that the admission of the challenged testimony did not "rise to the level of plain error" because "nothing" in the record "indicate[d] that a jury would have reached a different result had it not been for the admission of the testimony." *Id.* at 330. Assuming *arguendo* that the trial court erred by admitting DEA Agent Morgan's testimony about Garcia and Olmos's pending charges, any such error would not rise to plain error because "there was no testimony that [Garcia and Olmos] had been found guilty, pleaded guilty, or pleaded *nolo contendere* to the charges." *Batchelor*, 157 N.C. App. at 431 (italics added). Therefore, we hold that the trial court did not err at all by admitting

his testimony.

## IV.    Conclusion

For the reasons discussed above, this Court holds that the trial court did not plainly err.


NO PLAIN ERROR.

Judges ARROWOOD and GORE concur.